UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17-CR-00234 RLW |
| | ) |
| RAMI ALMUTTAN, | ) |
| | ) |
| Defendant. | ) |

### GUILTY-PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant RAMI ALMUTTAN, represented by defense counsel, William Lucco, and the United States of America, represented by the United States Attorney's Office for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney Office for the Eastern District of Missouri (hereinafter USAO). The Court is not a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A) and (B), Federal Rules of Criminal Procedure, in exchange for defendant's voluntary plea of guilty to Count 2, the Government agrees to dismiss Counts 1, 14, 60, and 61 and also agrees that no further federal prosecution will be brought in this District relative to the defendant's involvement in conspiring to sell and transport contraband cigarettes, to distribute and to possess with intent to distribute controlled substances and analogue controlled substances intended for human consumption, and launder money between January 1, 2014 and June 12, 2017 of which the USAO is aware at this time.

1

The parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).

### 3. ELEMENTS:

#### a. Count 2:

As to Count 2, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1) and 846, and admits there is a factual basis for the plea, and further fully understands that the elements of the crime are the following:

(Conspiracy to Distribute Controlled Substances and Analogues)

One, Sometime between 2014 and May 2017, the defendant and other persons reached an agreement or came to an understanding to knowingly distribute and to knowingly possess with intent to distribute controlled substances and analogue controlled substances intended for human consumption;

Two, The defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

Three, At the time the defendant joined in the agreement or understanding, he knew of the purpose of the agreement or understanding.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the USAO would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as the relevant conduct pursuant to Section 1B1.3:

2

### a. Background.

Prior to 2015, brothers, Hisham Mutan (Hisham), Mohammed Almuttan (Mohammed), Saddam Mutan (Saddam), and Rami Almuttan (Defendant), purchased and began operating numerous gas stations and convenience stores throughout St. Louis City and St. Louis County in the Eastern District of Missouri. These stores include Kenyes Market at 5477 North Kingshighway in the City of St. Louis (Kenyes), Hazelwood Discount Cigarettes at 6950 North Hanley in Hazelwood, MO (Hazelwood Discount), Northway Market at 5590 North Florissant Blvd. in St. Louis, MO (Northway), and the Phillips 66 gas station at 2800 North Florissant Blvd. in St. Louis, MO (Phillips 66).

### b. Synthetic Cannabinoid and Cathinone Distribution.

The convenience stores sold legal items, but Defendant, working with others, also began to sell synthetic cannabinoids and cathinones to customers and users. By the middle of 2015, Defendant had connections with others involved in synthetic drug manufacturing and distribution and was ordering quantities of pre-packaged synthetic cannabinoids and cathinones from various suppliers in New Jersey and Chicago, Illinois. The synthetic drugs were packaged in multi-gram packages with names including not but limited to "WTF", "Flamingo", "Caution", "Scooby Snax", "Crazy Monkey", and "Mad Hatter." Defendant and others then requested various co-conspirators deliver the packages to Kenyes, Hazelwood Discount, Northway, and Phillips 66 for sale. Defendant knew the packets were intended for human consumption and sold to give the user a "high" when smoked.

### 1. Search Warrant Executed at Kenyes on July 15, 2015.

On July 15, 2015, the St. Louis Metropolitan Police Department (SLMPD) conducted a search warrant at Kenyes. Investigators discovered and seized a package containing 997.64 grams of a powdered synthetic cathinone known as ALPHA-PVP.[1]

Investigators also recovered dozens of packets of smokable synthetic cathinones and cannabinoids ready for individual sale to users. Those packets contain in total 21.34 grams of the cathinone ALPHA-PVP and 117.38 grams of synthetic cannabinoids containing XLR-11 and AB-CHIMINACA. The packets were intended for human consumption and sold to give the user a "high" when smoked. Laboratory tests of the smokable material in the packets revealed a total 21.34 grams of the cathinone ALPHA-PVP and 117.38 grams of synthetic cannabinoids XLR-11[2], AB-CHIMINACA[3], and other chemicals. Investigators from the Drug Enforcement Administration (DEA) and Homeland Security Investigations (HSI) became involved in the investigation into the Almuttan/Mutan brothers and their businesses.

2. Manufacturing of Synthetic Cannabinoids at the Dittmer Farm.

In addition to receiving packaged synthetic drugs from suppliers around the United States, in middle to late 2016, quantities of synthetic drugs were being manufactured at the Almuttan/Mutan brothers' rural property at 7366 Browns Ford Rd. in Dittmer, MO (Dittmer Farm). Co-defendant Saad Al Mallak (Al Mallak) was the manufacturer or "cook" to create the synthetic drugs. Defendant requested Al Mallak to order and receive the raw synthetic chemical powder. Defendant financed the purchase of the raw synthetic chemicals. At the Dittmer Farm, Al Mallak liquefied the chemical powder in a solvent, such as acetone or Everclear alcohol. That

---

[1] ALPHA-PVP was scheduled as a schedule I controlled substance in the Controlled Substance Act on March 7, 2014 prior to being recovered in Kenyes Market.
[2] XLR-11 was scheduled as a schedule I controlled substance in the Controlled Substance Act on May 16, 2013 prior to being recovered in Kenyes Market.
[3] AB-CHIMINACA was scheduled as a schedule I controlled substance in the Controlled Substance Act on January 30, 2015 prior to being recovered in Kenyes Market.

solution was then sprayed on inert, but smokable, vegetable substances such as Damiana or Marshmallow leaf. Once the product dried, it was packaged in bulk for sale at the defendant's and his brothers' stores.

### 3. Seizure of Cannabinoid Powder on November 18, 2016.

On November 18, 2016, HSI seized 1,015.2 grams of FUB-AMB[4] that Al Mallak had ordered at the defendant's request and was destined for delivery to Al Mallak at the Dittmer Farm to use to manufacture smokeable synthetic drugs for the defendant.

### 4. Cellular Telephone Interceptions Detailing Synthetic Drug Distribution.

From November of 2016 to May of 2017, investigators also applied for and received numerous Title III cellular telephone intercept authorizations from the United States District Court in the Eastern District of Missouri. During part of this time, investigators monitored Defendant's cellular telephone. From February to April of 2017, investigators intercepted numerous calls between Defendant and others discussing all aspects of the manufacturing and distribution of synthetic cannabinoids and cathinones. The topics of the defendant's conversations included the manufacturing of synthetic drugs at the Dittmer Farm, day to day sales of packages of synthetic drugs to customers, and the illegal nature of synthetic drugs sales.

Further, as part of his duties for the synthetic conspiracy, Defendant also worked behind the counter at Kenyes, personally selling packets/packages of synthetic drugs to customers and users from time to time.

### 5. Seizure of Synthetic Cannabinoids from Talal Abuajaj on April 18, 2017.

---

[4] According to DEA expert chemists and pharmacologists, FUB-AMB is an analogue of the schedule I controlled substance AB-FUBINACA, and when intended for human consumption meets the definition of a schedule I controlled substance under Title 21, United State Code, Section 813. AB-FUBINACA was scheduled as a schedule I controlled substance in the Controlled Substance Act on February 10, 2014.

During the monitoring of Defendant's telephone, on April 18, 2017, investigators intercepted Defendant requesting a load of synthetic drugs to Kenyes. Investigators established physical surveillance at a residence and observed the Talal Abuajaj (Abuajaj) exiting the residence carrying several large cardboard boxes containing synthetic drugs. Abuajaj loaded those boxes into the trunk of his vehicle and drove toward Kenyes for the delivery. Investigators pulled Abuajaj over and received consent to search the trunk. In the trunk of the vehicle, Abuajaj was transporting 1,036 grams of synthetic cannabinoids containing FUB-AMB packed into 384 condiment-size plastic cups for individual sale by Defendant and others at Kenyes.

6. Execution of Search Warrants on May 23, 2017.

On May 23, 2017, DEA and HSI investigators conducted a series of search warrants on the Almuttan/Mutan brothers' businesses, residences, and other properties involved in the conspiracy including the Kenyes, Northway, Hazelwood Discount, and the Dittmer Farm. Investigators seized and the defendant is accountable for approximately 370 grams of synthetic cannabinoids packaged in 37 packets at the Dittmer Farm. Investigators located also the synthetic drug manufacturing laboratory in an upstairs bedroom of the residence. The laboratory contained numerous items used in the manufacturing of synthetic drugs including empty solvent containers, a tarp for spraying the chemical onto the inert vegetable material, and numerous kilograms of untreated vegetable material.

7. Seizure of Cannabinoid Powder on June 12, 2017.

On June 12, 2017, DEA seized 990.1 grams of FUB-AMB ordered by Al Mallak at the request of Defendant for delivery to the Dittmer Farm for manufacture into smokeable synthetic drugs. Al Mallak placed this order via email to a synthetic chemical supplier in China prior to Al Mallak's and Defendant's arrest in May of 2017. However, the package did not arrive into the United States until June 12, 2017.

### c. Amount of Controlled Substances Defendant is Accountable for.

The amount of controlled substances and/or analogue controlled substances, in light of the known evidence, cellular telephone interceptions, and seizures, attributable to Defendant is not subject to precise calculation. However, based on information from intercepted telephone conversations and specific and laboratory-tested seizures, the parties have agreed that Defendant is accountable for **3,528.68 grams of synthetic cannabinoids** and **1,018.98 grams of synthetic cathinones** based on the controlled purchases and seizures detailed in sections 4(c)(1-3, 5-7) of this Guilty Plea Agreement. Further, Defendant admits that he was aware that the synthetic drugs for which he is accountable were controlled substances and/or analogue controlled substances that were intended for human consumption and would provide the user with a "high" the same or similar to a scheduled I or II controlled substances.

### 5. STATUTORY PENALTIES:

#### a. Count 2:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of at least 3 years.

### 6. U.S. SENTENCING GUIDELINES: 2021 MANUAL:

The defendant understands that this offense is affected by the United States Sentencing Guidelines (U.S.S.G.) and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S.S.G. Total Offense Level provisions that apply:

#### a. Chapter 2 Offense Conduct:

#### I. Count 2:

**(1) Base Offense Level:** The parties agree that the quantity of controlled substances and/or analogue controlled substances for which defendant is accountable, including relevant conduct, is the following:

(A.) <u>Synthetic cannabinoids</u>: The parties agree the defendant is accountable for 3,528.68 grams of synthetic cannabinoids. The parties also agree that when converted under the U.S.S.G. drug equivalency tables in Application Note 8(D) of §2D1.1 at the ratio of 1 gram of synthetic cannabinoids to 167 grams of Combined Drug Weight, the defendant is accountable for 589.28 kilograms of Combined Drug Weight for the synthetic cannabinoids.

(B.) <u>Synthetic Cathinones</u>: The parties agree the defendant is accountable for 1,018.98 grams of synthetic cathinones. The parties also agree that when converted under the U.S.S.G. drug equivalency tables in Application Note 8(D) of §2D1.1 at the ratio of 1 gram of synthetic cathinones to 380 grams of Combined Drug Weight, the defendant is accountable for 373.95 kilograms of Combined Drug Weight for the synthetic cathinones.

(C.) <u>Total</u>: The parties agree the defendant is accountable for between 700 kilograms and 1,000 kilograms of Combined Drug Weight resulting in a level of 28 pursuant to U.S.S.G §2D1.1(c)(6).

**(2) Chapter 2 Specific Offense Characteristics**: The parties recommend that the following Specific Offense Characteristics may apply:

(A.) <u>Maintaining of A Drug Premises</u>: The parties recommend that two levels should be added in that the defendant maintained a premises for the

purpose of manufacturing controlled substances and analogue controlled substances under U.S.S.G §2D1.1(b)(12), the Dittmer Farm.

(B.) <u>Safety Valve</u>: The parties have agreed that a two-level reduction pursuant to U.S.S.G §2D1.1(b)(18) would be appropriate if the defendant otherwise meets the criteria set forth in U.S.S.G §5C1.2. Based upon the information presently known, the parties recommend that the defendant meets the criteria set forth in U.S.S.G §5C1.2(a)(2), (3), (4), and (5). Whether the defendant meets the criteria set forth in U.S.S.G §5C1.2(a)(1), relating to the defendant's criminal history, is left to the determination of the Court as stated in paragraph 6(e) herein.

**b. Chapter 3 Adjustments**: The parties agree the following Chapter 3 Adjustments are applicable:

**(1) Acceptance of Responsibility**: The parties recommend that two levels should be deducted pursuant to U.S.S.G §3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility. Further, the USAO, under the facts known at the present, will make a motion at the time of sentencing for an extra one level reduction based on the defendant's notification to the USAO of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the USAO receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the USAO may decide not to file such motion without violating the plea agreement.

**c. Estimated Total Offense Level:** The parties estimate the Total Offense Level is Level 25.

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the

Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of the Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, and the guilty plea.

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States

Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the USAO.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

  **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

  **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143. However, based on the provisions of Title 18, United States Code, Section 3145, the parties recommend that circumstances of this case and the Defendant's behavior on pre-trail release do not warrant post-plea detention at this time.

  **f. Fines, Restitution, and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

  The parties agree and jointly recommend that no restitution is due and that restitution is not mandatory in this case pursuant to the Mandatory Victims Restitution Act (18 U.S.C. § 3663A) because a determination of complex issues of fact relating to the amount of any victims' losses would complicate and prolong the sentencing process to such a degree that the burden outweighs the need to provide restitution. Here, determining actual tax loss amounts would complicate and prolong the sentencing process to such a degree that the need to provide restitution to state governments or any other alleged victim, if any is due, would be outweighed by its burden on the sentencing process.

  Additionally, the parties agree and jointly recommend that no restitution be ordered in this case because of Defendant's agreement to forfeiture as outlined in the following paragraph and the substantial offsets in taxes paid to the State of Missouri and local governments. Defendant

12

acknowledges this restitution agreement does not impact the amount of intended tax loss calculated and admitted to under Section 4 of this Plea Agreement.

**g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following: All items listed in the Bill of Particulars for Forfeiture of Property (Doc. #581) except for Items (a), (tt). The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

The Government agrees that it will return to the defendant and that it will not pursue forfeiture of the following property that was seized as part of the investigation: The following items listed in the Bill of Particulars for Forfeiture of Property (Doc. #581): (a), (tt) (the "Returned Property"). The defendant releases and forever discharges the United States of America, the Internal Revenue Service, the United States Department of Homeland Security Investigations, the United States Marshals Service, and the departments, representatives, officers, agents, attorneys, and employees of the entities herein above named, of and from any and all civil liabilities, claims or causes of action whatsoever at law or in equity, whether now known or

hereafter discovered, including without limitation all civil claims and causes of action arising out of the seizure of the Returned Property.

The defendant knowingly and voluntarily waives any right, title, and interest in all other items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the USAO to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the

proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the USAO's evidence and discussed the USAO's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the USAO's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the USAO, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if the defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its

option, may be released from its obligations under this agreement. The USAO may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement related to sentencing as set forth in Section 2 above.

4/6/22
Date

JOHN R. MANTOVANI, #50867MO
Assistant United States Attorney

04.06.2022
Date

RAMI ALMUTTAN
Defendant

April 6, 2022
Date

WILLIAM LUCCO
Attorney for Defendant