IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION - ST. LOUIS
BEFORE THE HONORABLE RONNIE L. WHITE
DISTRICT JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Government, ) | |
| vs. ) | Case Number |
| ) | 4:17-CR-00234-2 |
| RAMI ALMUTTAN, *also known as* ) | |
| *Abu Louay*, ) | |
| ) | |
| Defendant. ) | |

==================================================================

- SENTENCING -

OCTOBER 3RD, 2022

==================================================================

APPEARANCES

For the Government:
John R. Mantovani, AUSA
U.S. ATTORNEY'S OFFICE
111 South 10th Street
St. Louis, MO 63102

For the Defendant:
J. William Lucco, Esq.
LUCCO, BROWN, DAWSON, HERTZ
224 St. Louis Street
Edwardsville, IL 62025

Stenographically Reported & Produced by:
LINDA NICHOLS, RDR, CRR
Official Court Reporter
United States District Court
Eastern District of Missouri
111 South 10th Street, Third Floor
St. Louis, MO 63102

- SENTENCING -

OCTOBER 3RD, 2022

PROCEEDINGS IN OPEN COURT COMMENCED

AT 2:28 P.M.:

    THE COURT:  Counsel, are you ready to proceed?

    MR. MANTOVANI:  Yes, Your Honor.

    MR. LUCCO:  I am, Your Honor.

    THE COURT:  This is the *United States vs. Mohammed Almuttan, et al*.  This Defendant is 'Hisham Mutan'.  The Cause Number is 4:17-CR-234.

    (Brief discussion off the record.)

    THE COURT:  This is the *United States vs. Rami Almuttan*.  The Government is represented by Assistant United States Attorney John Mantovani, defense counsel is Bill Lucco, and Mr. Almuttan is here in person.

    Sir, on April 7th, 2022, you pled guilty to the charge of Conspiracy to Distribute Controlled Substances and Analogues.  Do you remember that?

    THE DEFENDANT:  Yes.

    THE COURT:  Do you understand you're here this afternoon for your sentencing?

    THE DEFENDANT:  Yes, Your Honor.

    THE COURT:  Have you and Mr. Lucco had an opportunity to read and discuss the Presentence Report?

    THE DEFENDANT:  Yes, Your Honor.

1    THE COURT: Mr. Mantovani, have you read it?

2    MR. MANTOVANI: Yes, Your Honor.

3    THE COURT: Are there any objections as to the factual
4    accuracy of the report?

5    MR. MANTOVANI: No, Your Honor.

6    THE COURT: Are there any objections to the probation
7    officer's application of the Sentencing Guidelines?

8    MR. MANTOVANI: No, Your Honor.

9    THE COURT: There being no objections to the factual
10   statements contained in the Presentence Report, the Court adopts
11   these statements as its Findings of Fact.

12   The Court determines that the applicable Guidelines
13   are: Total Offense Level of 25, Criminal History Category of I.
14   The Guideline provisions call for 57 to 71 months in prison.

15   Under Local Rule 13.05 it is the procedure of this
16   Court to hold a bench conference in every plea and every
17   sentencing hearing. We will now conduct the bench conference
18   and this portion of the transcript will be filed under seal.

19   Counsel, please approach sidebar.

20   **SEALED SIDEBAR PROCEEDINGS:**

21              (*Pursuant to Local Rule 13.05*

22              *a conference was held on the record*

23              *and placed under Seal.*)

24   **PROCEEDINGS RETURNED TO OPEN COURT:**

25   THE COURT: Do either party know of any reason why this

1  Court should not now proceed with the imposition of sentence?

2          MR. MANTOVANI:  No, Your Honor.

3          MR. LUCCO:  No, I have no reason, Your Honor.

4          THE COURT:  Mr. Lucco, do you wish to make a statement

5  or present any information in mitigation of the sentence?

6          MR. LUCCO:  Very briefly, Your Honor.

7          THE COURT:  Sure.

8          MR. LUCCO:  May it please the Court?

9          THE COURT:  You may proceed.

10         MR. LUCCO:  And Mr. Mantovani.

11         These are words and phrases used by others to describe

12 my client, Rami Almuttan: gentle spirit, kind, good humor, smile

13 on his face, courteous, generous, helps others, compassionate.

14 I use these to show that they are indicative of a man worthy of

15 probation.  They are indicative of a man capable of successfully

16 complying with terms and conditions of probation, no matter how

17 stringent.

18         So on his behalf, Mr. Rami Almuttan, who I'm honored to

19 represent, I'm requesting of this Court a sentence of probation.

20 We and the Government agree with the Presentence Report that

21 Rami is eligible for up to five years of probation, as stated in

22 paragraph 113 of the Presentence Report.  I'm going to rely on,

23 at this point, the written Memorandum of Sentencing we filed

24 requesting probation and a variance to get there for our

25 positions as they relate to the precise application of the

1    3553(a) factors, but with the Court's indulgence I will expound

2    for a moment on why I think probation is appropriate.

3             Congress has approved such probation for this offense.

4    The law supports it.  The history and characteristics of Rami

5    Almuttan support a sentence of probation.  There is no question

6    Mr. Almuttan crossed the line of the law and committed a serious

7    offense for which he has pled guilty and accepted full

8    responsibility.

9             His conduct, however, before this offense, Your Honor,

10   was exemplary.  His conduct during the five-plus years of

11   supervised release under the terms and conditions much of the

12   time of an ankle bracelet I believe demonstrates that at least

13   before this offense, no matter what temptations led someone into

14   these offenses, this kind of offense, and his conduct since he

15   was arrested and jailed, show that he has the ability to comport

16   with the law.

17            I believe that it demonstrates that there is no need

18   for protection.  The public needs no protection from

19   Mr. Almuttan.  As cited in my memo, there's national and

20   Eighth Circuit statistics on these kind of offenses that

21   demonstrate that 31 to 41 percent of the people in his position,

22   a U.S. citizen eligible for a non-prison offense -- which he

23   is -- receive probation.  So I think all of these are factors of

24   why the Court, despite the seriousness of the offense, should

25   grant Mr. Rami Almuttan probation.

1     I'm going to really close this quickly because you have
2  my memo and you have my cites, but I wish to put some of those
3  words that I said at the very beginning in context.  One person
4  wrote, He always has a smile on his face.  Greets every customer
5  with respect.  I have witnessed him help out the homeless with
6  warm meals and provide people with small jobs around his market
7  to put money in their pockets to help them with their children.
8     Another person wrote, I met Rami Almuttan two years ago
9  and I needed help with my car.  He loaned me $500 to fix my
10 ride.  This was the handwritten letter that I didn't have typed
11 up, Your Honor, because of what I thought was authentic, genuine
12 feelings by this man.  That was a big help to keep my job.  That
13 was a big help for me because I'm from Afghanistan and I have no
14 family here.  Thank you, Your Honor.  But Rami was there for me.
15 I never forget his help.
16    And lastly, a letter that stated, Mr. Rami Almuttan is
17 a gentle giant.  It is an absolute joy to watch him work with
18 our preschoolers.  If you can, just try to imagine him at
19 six foot five, 220 pounds, sitting on the floor reading and
20 being animated while the children wait to hear what voice he's
21 going to use for the next character while they are laughing.
22    I believe Hisham, his brother, and Saddam, his brother,
23 assist in that school, also, because that letter contained
24 another line that said, When these folks are not available, Rami
25 is our go-to guy.

       I submit, Judge, that a sentence of probation for Rami Almuttan is one that is sufficient but not greater than necessary to comply with what Congress set forth in Section 3553, Title 18, of the United States Code.  It is supported by all the facts and circumstances that are of the entire record in this case.

       With that I will close, Your Honor, and ask the Court respectfully to give Mr. Rami Almuttan probation.

       THE COURT:  Mr. Almuttan, would you like to speak to the Court about your sentence?

       THE DEFENDANT:  Yes, Your Honor.

       Your Honor, I'm 38 years old.  I have a wife and six children and I try to work very hard to provide for them, Your Honor.  This is my first time here in trouble and it will be the last if you give me a chance, Your Honor.

       Thank you.

       THE COURT:  Mr. Almuttan, I have two visions of you, one just described by Mr. Lucco, you sitting in a school speaking to children, and then the other one going back to your stores and selling drugs out of the store where children come in and buy snacks on their way to and from school.

       How do you square those two?

       THE DEFENDANT:  I'm deeply sorry, Your Honor.  I made the mistake and I apologize about that, Your Honor.

       THE COURT:  Mr. Mantovani?

MR. MANTOVANI:  I have nothing to add, Your Honor. Thank you.

THE COURT:  After hearing from counsel and the Defendant, and reviewing the Presentence Report, Defendant's Sentencing Memorandum and letters of support and the Government's motion, the Court is now ready to proceed with the imposition of sentence.

The instant offense involved the Defendant's manufacturing and distribution of synthetic drugs in the Eastern District of Missouri.  The Defendant utilized his family farm to manufacture the drugs, and sold them in convenience stores and gas stations owned and operated by the Defendant.

The Defendant is ranked second in culpability as to the conspiracy to traffic in contraband cigarettes and first in culpability as to the synthetic drug conspiracy.  Defendant has no criminal history and has no history of substance abuse.

As such, in light of the Advisory Guidelines range and the provisions of 18 U.S.C. § 3553(a), a sentence of 48 months imprisonment, which represents a downward departure from the Guidelines range, I believe would be sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a).

Pursuant to the Sentencing Reform Act of 1984 and the provisions of 18 U.S.C. § 3553(a), it is the judgment of the Court that the Defendant, Rami Almuttan, is hereby committed to

the custody of the Bureau of Prisons to be imprisoned for a term of 48 months.

While in the custody of the Bureau of Prisons it is recommended the Defendant be evaluated for participation in an occupational educational program. Such programs are recommended to the extent that they are consistent with the Bureau of Prisons policies.

Upon release from imprisonment the Defendant shall be placed on supervised release for a term of three years. Within 72 hours of release from the custody of the Bureau of Prisons, the Defendant shall report in-person to the probation office in the district to which Defendant is released.

It is further ordered that Defendant shall pay to the United States a fine of $20,000. Payments of the fine are made payable to the Clerk of Court. The interest requirement for the fine is waived.

All criminal monetary penalties are due in full immediately. The Defendant shall pay all criminal monetary penalties through the Clerk of Court. If the Defendant cannot pay in full immediately, then the Defendant shall make payments under the following Minimum Payment Schedule. During incarceration, it is recommended that the Defendant pay criminal monetary penalties through an installment plan in accordance with the Bureau of Prisons Inmate Financial Responsibility Program at the rate of 50 percent of the funds available to the

1  Defendant.
2           If the Defendant owes any criminal monetary penalties
3  when released from incarceration, then the Defendant shall make
4  payments in monthly installments of at least $500 or no less
5  than ten percent of the Defendant's gross earnings, whichever is
6  greater, with payments to commence no later than 30 days after
7  release from imprisonment.
8           Until all criminal monetary penalties are paid in full,
9  the Defendant shall notify the court and this district's United
10 States Attorney's Office Financial Litigation Unit of any
11 material changes in the Defendant's economic circumstances that
12 might affect the Defendant's ability to pay criminal monetary
13 penalties.
14          The Defendant shall notify this District's United
15 States Attorney's Office Financial Litigation Unit of any change
16 of mailing or residence address that occurs while any portion of
17 the criminal monetary penalties remain unpaid.  It is
18 recommended that the Defendant participate in the financial
19 responsibility program while incarcerated, if it is consistent
20 with the Bureau of Prisons policies.
21          As part of your supervision you must comply with the
22 standard conditions of supervision that have been adopted by
23 this Court.  You must also comply with the following additional
24 special conditions.  If it is determined there are costs
25 associated with any services provided, you shall pay those costs

1  based on a copayment fee established by the probation office.

2          You must submit your person, property, house,
3  residence, vehicles, papers, computers, other electronic
4  communications, or data storage devices, or media, or office to
5  a search conducted by a United States probation officer.  You
6  must warn any other occupants that the premises may be subject
7  to searches pursuant to this condition.  The probation officer
8  may conduct a search under this condition only when reasonable
9  suspicion exists that you have violated a condition of
10 supervision and that the areas to be searched contain evidence
11 of this violation.

12         If you are ordered deported from the United States, you
13 must remain outside the United States unless legally authorized
14 to re-enter.  If you re-enter the United States, you must report
15 to the nearest probation office within 72 hours of your return.

16         It is further ordered that the Defendant shall pay to
17 the United States a special assessment of $100, which shall be
18 due immediately.

19         Mr. Almuttan, do you have any questions about any of
20 the conditions of supervision?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  Mr. Mantovani, is there a forfeiture in
23 this one, as well?

24         MR. MANTOVANI:  There is, Your Honor.

25         THE COURT:  I have it.

1       MR. MANTOVANI: Yes.
2       THE COURT: The Defendant has forfeited all right,
3  title and interest in the property previously identified in the
4  Preliminary Orders of Forfeiture granted on June 7th, 2022.
5       MR. MANTOVANI: Thank you, Judge.
6       THE COURT: Mr. Almuttan, you said you did not have any
7  questions about supervision?
8       THE DEFENDANT: No, Your Honor.
9       THE COURT: I must now advise you that it is your right
10 to file a Notice of Appeal from this sentence within 14 days
11 from today. Failure to do so within that time period shall be
12 deemed a waiver of your right to appeal.
13      I must also mention to you that pursuant to your Guilty
14 Plea Agreement, you agreed in paragraph section 7(A)(ii) that
15 after the Total Offense Level and Criminal History Categories
16 were determined, if you received a sentence within or below the
17 Guidelines, that you would waive all rights to appeal that
18 sentence.
19      You need to speak with Mr. Lucco about that before you
20 leave here today. Understood?
21      THE DEFENDANT: Yes, Your Honor.
22      THE COURT: I need a verbal answer.
23      THE DEFENDANT: Yes, Your Honor.
24      THE COURT: Do either party now have any objections to
25 the Court's Findings of Fact, Conclusions of Law, or to the

```
 1  manner in which this sentence was pronounced?
 2          MR. MANTOVANI:  No, Your Honor.
 3          MR. LUCCO:  No, Your Honor.
 4          THE COURT:  The sentence will be imposed as stated.
 5          Mr. Mantovani, is there anything further from the
 6  Government?
 7          MR. MANTOVANI:  No, Your Honor.  Thank you.
 8          THE COURT:  Thank you.
 9          Mr. Lucco?
10          MR. LUCCO:  Two things, Your Honor.  I would ask the
11  Court to make a designation that his sentence be served at the
12  federal prison camp in Marion, Illinois.  I've explained to
13  Mr. Almuttan what all the Court can and cannot do in these
14  circumstances.  Nevertheless, I'd ask the Court to make that
15  designation -- or that request.
16          Secondly, I would ask that he be permitted to
17  self-surrender, as he has been on bail all this time.  He's not
18  a risk to flee and he's not a danger to anyone or the community.
19          THE COURT:  If it is consistent with the policies of
20  the Bureau of Prisons, the Court recommends that Mr. Almuttan
21  serve his sentence at the facility in Marion, Illinois.
22          Mr. Almuttan, you will be allowed to self-surrender.
23  You are to surrender yourself at the institution designated by
24  the Bureau of Prisons when notified by the United States
25  Marshal.
```

1        Mr. Mantovani, is there anything else?
2        MR. MANTOVANI:  Yes, Your Honor.  Thank you.  And
3   I apologize for not mentioning this before.
4        Based on Defendant's plea of guilty and his imposed
5   sentence, the Government moves to dismiss Counts One, Fourteen,
6   Sixty and Sixty-One.
7        THE COURT:  Those counts are dismissed.
8        Mr. Lucco?
9        MR. LUCCO:  Nothing further, Your Honor.
10       THE COURT:  That will conclude this hearing.  Thank
11  you, counsel.
12       MR. MANTOVANI:  Thank you, Judge.
13       MR. LUCCO:  Thank you, Judge.
14              - RECESS AT 2:46 P.M. -

REPORTER'S CERTIFICATE

I, Linda C. Nichols, Registered Diplomate Reporter and Certified Realtime Reporter, do hereby certify that I am a duly appointed Official Court Reporter for the United States District Court of the Eastern District of Missouri, and that the foregoing is a true and accurate reproduction of the Sentencing proceedings held October 3rd, 2022, in the matter of:

UNITED STATES OF AMERICA

v.

RAMI ALMUTTAN, *also known as Abu Louay*,

Case Number 4:17-CR-00234-2

I further certify that this transcript consists of pp. 1-14 inclusive.

Dated October 20th, 2022.

\s\  Linda Nichols
Linda Nichols, RDR, CRR
Official Court Reporter
United States District Court
Eastern District of Missouri